UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-24116-CIV-ALTONAGA/O'Sullivan

MARIA ORTIZ,

    Plaintiff,
vs.

HARD ROCK CAFÉ
INTERNATIONAL (USA), INC., *et al.,*

    Defendants.
    _____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, Hard Rock Café International (USA), Inc.'s ("Hard Rock['s]") Motion to Dismiss . . . ("Motion") [ECF No. 54], filed June 27, 2014. On July 14, 2014, Plaintiff, Maria Ortiz ("Ortiz"), filed a Response . . . [ECF No. 55]; Hard Rock filed its Reply . . . ("Reply") on July 22, 2014 [ECF No. 59]. The Court has carefully reviewed the parties' written submissions and applicable law.

### I. BACKGROUND

Ortiz resides in New Jersey and is a U.S. citizen, and Hard Rock is a Florida corporation with its principal place of business in Florida. (*See* Am. Compl. ¶¶ 4–5 [ECF No. 45]). Plaintiff alleges Defendant, Hard Rock Limited ("Hard Rock Limited") is an instrumentality or alter ego of Hard Rock (*see id.* ¶ 9) and Hard Rock Limited consented to Hard Rock acting as its agent (*see id.* ¶ 11). Inversiones Zahena S.A. ("Inversiones") is a Dominican company that operates the Hard Rock Hotel & Casino Punta Cana (the "Resort") in the Dominican Republic. (*See id.* ¶¶ 12, 15). Hard Rock and Hard Rock Limited (collectively, the "Hard Rock Entities") consented to Inversiones acting as their agent, and Inversiones consented to act on their behalf in

operating the Resort. (*See id.* ¶ 13). Ortiz alleges the Hard Rock Entities have control over, or the right to control, Inversiones with respect to the Resort's management and operation, its training and qualification of employees, how the Resort is maintained, its risk management and crisis protocols, the method of inspection of the property, and the Resort's methods of accounting. (*See id.* ¶ 14).

On November 19, 2012, Ortiz was a guest at the Resort when she slipped and fell on a walkway that Inversiones had a duty to maintain in a safe condition. (*See id.* ¶¶ 16–18). As a result, Ortiz suffered a fracture that required a shoulder replacement and rod insertion. (*See id.* ¶ 16). Ortiz alleges Inversiones failed to take reasonable precautions to ensure the safety of its invitees and negligently breached its duties. (*See id.* ¶ 20).

Hard Rock moves for dismissal of this matter on the basis of the doctrine of *forum non conveniens*.[1] Hard Rock states Inversiones is the owner and operator of the Resort. (*See* Aff. of Jay Wolszczak ¶ 5 [ECF No. 54-1]). Hard Rock says it cannot compel the testimony of a number of witnesses who either saw the scene of the accident soon after it occurred or offered Ortiz medical treatment. (*See* Mot. 10; Aff. of Gerardo De Groot [ECF No. 54-4]). Some of the witnesses to the day's events are no longer employed at the Resort. (*See generally* Groot Aff.). Thus, even if the Resort's employees were considered Hard Rock's, Hard Rock contends these former employees are outside the compulsory process of the Court. (*See* Mot. 10). According to Ortiz, three of the potential witnesses in the Groot Affidavit may be compelled to testify because they are "currently employed" at the Resort. (*See* Resp. 5).

---

[1] Although Hard Rock does not limit its argument for dismissal on the basis of *forum non conveniens* to Counts I and II (*see generally* Mot.), those are the only counts to which Hard Rock is a party, and therefore the Court only makes a determination with respect to these two counts. And while Hard Rock also moves to dismiss the Amended Complaint for failure to state a claim in Count I and for failure to join an indispensable party (*see id.*), these potential grounds for dismissal are not addressed given the Court's resolution of Hard Rock's *forum non conveniens* argument.

## II. ANALYSIS

### A. Standard

A motion seeking dismissal of an action based upon the doctrine of *forum non conveniens* is to be evaluated by the Court as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). *See Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1276 (11th Cir. 2002). On a Rule 12(b)(3) motion, the Court "may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact." *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (citation omitted).

"Under the doctrine of *forum non conveniens*, a district court has inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available." *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 506–07 (1947)). To obtain a dismissal under the doctrine, Hard Rock must demonstrate (1) an adequate alternative forum is available; (2) public and private factors weigh in favor of dismissal; and (3) Ortiz can reinstate her suit in the alternative forum without undue inconvenience and prejudice. *See Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 864 (11th Cir. 2007) (citing *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001)). But because a plaintiff's choice of forum is entitled to deference, the defendant "invoking forum non conveniens bears a heavy burden in opposing the plaintiff's chosen forum." *Wilson v. Island Seas Invs., Ltd.*, 590 F.3d 1264, 1269 (11th Cir. 2009) (citation and internal quotation marks omitted).

With regard to the first prong of the *forum non conveniens* test, the Court must examine whether the foreign court can assert jurisdiction over the litigation (availability), cognizant that

only in rare circumstances will the remedy offered by the other forum be clearly unsatisfactory (adequacy). *See Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1290 (11th Cir. 2009) (citations omitted). If the defendant is amenable to process in the other jurisdiction, the alternative forum prong of the analysis is generally satisfied. *Id.* (citation omitted). As to the adequacy prong, "a remedy is inadequate when it amounts to 'no remedy at all.'" *Id.* (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001); quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)).

In the second prong, the Court first considers all relevant factors of private interest, "weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice." *La Seguridad*, 707 F.2d at 1307 (citation omitted). Because Ortiz is a U.S. citizen, Hard Rock must present "positive evidence of unusually extreme circumstances, . . . thoroughly convinc[ing the Court] that material injustice is manifest," before the Court will exercise its discretion to deny a "United States citizen access to the courts of this country." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004) (alterations added; citations and internal quotation marks omitted). "[T]he presumption in favor of the plaintiffs' choice of forum . . . is to be applied specifically when weighing the private interests." *Id.* at 1102 (alterations added; citation omitted). Private interest factors include

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381 (11th Cir. 2009) (quoting *Gulf Oil Corp.*, 330 U.S. at 508–09).

4

If the Court finds the balance of private interests to be in equipoise or near equipoise, it must then determine whether factors of public interest tip the balance in favor of a trial in a foreign forum. *See La Seguridad*, 707 F.2d at 1307. Although "private factors are generally considered more important" than public ones, courts should consider both public and private factors. *Leon*, 251 F.3d at 1311 (citations and internal quotation marks omitted). "Public interest considerations include factors such as (1) the forum's interest in entertaining the suit; (2) court congestion and jury duty generated by the lawsuit; (3) the desirability of having localized controversies decided at home; and (4) the difficulty in determining applicable law and applying foreign law." *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1061 (11th Cir. 2009) (citation omitted). The Court should determine the appropriateness of having trial in a forum at home with the law to be applied rather than having the Court "untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp.*, 330 U.S. at 509. These factors are not exhaustive, and courts are free to be flexible in responding to cases as they are presented. *See King*, 562 F.3d at 1381–82 (citation omitted).

In the final prong, the Court must ensure Ortiz can reinstate her suit "in the alternate forum without undue inconvenience or prejudice." *Wilson*, 590 F.3d at 1272 (citation omitted).

**B. *Forum Non Conveniens* Analysis**

*1. Adequacy and Availability of the Dominican Republic*

The parties agree the Dominican Republic provides an available and adequate forum. (*See* Mot. 7; Resp. 7; Aff. of Lic. Juan Manuel Ubiera ¶¶ 56–60 [ECF No. 54-3]). Courts in this District have found the Dominican Republic is an adequate forum. *See Perez-Lang v. Corporacion de Hoteles, S.A.*, 575 F. Supp. 2d 1345, 1349 (S.D. Fla. 2008) ("Dominican . . . law provides causes of action sounding in tort for bodily injuries and permits parties in such causes

of action to both engage in extensive pre-trial discovery and examine parties and witnesses at trial." (alteration added)).[2]

### 2. *Private Interest and Public Interest Factors*

Hard Rock relies extensively on an unpublished Middle District of Florida decision dismissing a suit on *forum non conveniens* grounds, *Goldstein v. Hard Rock Cafe Int'l (USA), Inc.*, No. 6:12-cv-148-Orl-18KRS [ECF No. 49] (Sept. 12, 2012) (hereinafter, "*Goldstein I*"), *aff'd* 519 F. App'x 653 (11th Cir. 2013) (per curiam) (hereinafter, "*Goldstein II*"). (*See* Mot., Ex. B [ECF No. 54-2]). The *Goldstein* suit was brought by U.S. citizens and New Jersey residents for personal injury suffered at the very same resort at issue in this litigation. *See Goldstein I* 2. Its analysis is thus highly relevant here. Ortiz's sole response to Hard Rock's reliance on *Goldstein I* is that the "case is distinguishable because there were additional defendants and other considerations related to those defendants. Further, the court in *Goldstein* failed to articulate the proper standard under *SME Racks*." (Resp. 7). Yet the Eleventh Circuit affirmed *Goldstein I*, holding the district court's failure to consider "the U.S. interest in providing a forum for U.S. citizen plaintiffs in its public-factor analysis" was not an abuse of discretion. *Goldstein II*, 519 F. App'x at 655 n.2 (citing *SME Racks, Inc.*, 382 F.3d at 1104). Ortiz's critique of the decision is unavailing.

### i. *Private Interest Factors*

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). Jay Wolszczak, Hard Rock's Vice President and General Counsel, states Inversiones, through its subsidiaries, owns and operates the Resort. (*See* Wolszczak Aff. ¶ 5). Hard Rock provides an affidavit of Gerardo De Groot, the

---

[2] In affirming the *Perez-Lang* decision, the Eleventh Circuit called it a "well-reasoned order." *Perez-Lang v. Corporacion De Hoteles, S.A.*, 325 F. App'x 900, 900 (11th Cir. 2009) (per curiam).

operations manager for the Resort, who names four individuals with potentially relevant information about the accident at issue. (*See* Groot Aff. ¶¶ 5–22). One worked at the Resort as of December 20, 2013 (*see id.* ¶ 5), but the three others did not (*see id.* ¶¶ 11, 16, 19). Hard Rock claims none of the employees are Hard Rock's, and thus they cannot be compelled to testify in a trial in this Court; and even if Hector Montas ("Montas"), who is still an employee of the Resort, were considered its employee, he does not have a visa to travel to the United States to testify here. (*See* Mot. 9–10; Groot Aff.).

Ortiz is dismissive of Hard Rock's argument, stating Hard Rock "has access to all current employees" of the Resort as evidenced by its ability to obtain the Groot Affidavit, and three of the employees "are available to testify" (Resp. 9) because they are "currently employed" at the Resort (*id.* 5). Ortiz argues, "The evidence is clear . . . Dr. Luna [is] available to testify" (Resp. 9), but does not provide any evidence Dr. Luna is employed by the Resort or Hard Rock to counter Hard Rock's assertion she has a different employer (*see* Groot Aff. ¶ 19).[3] And Ortiz's assertion the individuals are employed by Hard Rock is unsupported except for the argument Hard Rock has been indemnified by Inversiones, which controls the defense and settlement of the claim. (*See* Resp. 9 (citation omitted)). Ortiz presents no authority indicating this indemnification constitutes "employment" by Hard Rock such that it would affect the compulsory powers of the Court. And third parties who are outside the United States cannot be compelled to testify in this matter. *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1331 (11th Cir. 2011). To be sure, this case is not analogous to one on which Ortiz relies (*see* Resp. 3), *R. Travis Collins v. Marriott International Inc.*, No. 09-22423-CIV-JORDAN (S.D. Fla. May 11, 2010) [ECF No. 57], in which the employees at issue were *actual* employees of a party-defendant, The Abaco Club. (*See id.* 4).

---

[3] The doctor's full name does not appear in the Groot Affidavit.

7

Even assuming Hard Rock controls some Resort employees such that they could be compelled to testify, that alone does not answer the question of access to their testimony. As *Goldstein I* instructs, the inability of witnesses to enter the United States creates challenges for a potential trial in this District. *See Goldstein I* 8–9. For example, Montas, who observed the scene soon after Ortiz's fall, has no visa to travel to the United States. (*See* Groot Aff. ¶¶ 5–10). Nor does Dr. Luna, who saw Ortiz after her accident and can testify about Ortiz's refusal of medical services. (*See id.* ¶¶ 18–22). While depositions and letters rogatory may be an option in such cases, *see Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1264 (S.D. Fla. 2001), "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants," *Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *9 (S.D. Fla. Sept. 5, 2008) (quoting *Gulf Oil Corp.*, 330 U.S. at 511).

Further, two potential witnesses no longer appear to be employed by Inversiones: Joan Martinez ("Martinez") and Amado Feliz ("Feliz"). (*See generally* Groot Aff.). Ortiz cavalierly asserts Feliz "is expected to testify to the exact same facts as [] Montas. His testimony is then not only cumulative but unnecessary." (Resp. 9 (alteration added; footnote call number omitted)). Ortiz cites no authority for her proposition the need for Feliz's testimony should be discounted in the *forum non conveniens* analysis, and even were she to rely on an analogy to Federal Rule of Evidence 403, that rule permits a court to "exclude relevant evidence if its probative value is *substantially outweighed* by a danger of . . . wasting time[] or needlessly presenting cumulative evidence." FED. R. EVID. 403 (alterations and emphasis added). Ortiz makes no persuasive case Feliz's expected testimony is substantially outweighed by a risk of

8

being cumulative, or that testimony of multiple witnesses from the scene of the accident is improper in an action concerning the physical condition of a walkway.

The Groot Affidavit satisfies Hard Rock's heavy burden of showing the private interest of access to evidence compels a dismissal of the case. To this, Ortiz contends Hard Rock has records and personnel in Florida relevant to "the brand standards and guidelines" and the "standards the [Resort] . . . is supposed to follow are conceived and generated in Florida." (Resp. 11 (alterations added; citations omitted)). But as the court in *Goldstein I* noted, a trial in either jurisdiction would likely proceed without some of the testimony one of the parties desired. *See Goldstein I* 9. And a trial without the testimony of many eyewitnesses at the scene, as well as a doctor who saw Ortiz soon after the accident, "would be severely and unfairly prejudicial to" Hard Rock. *Id.* (citation omitted). The need for firsthand fact witnesses is unusually extreme in this case, and the Court is convinced failing to provide Hard Rock access to these witnesses in the Dominican Republic would be manifestly unjust. *See SME Racks, Inc.*, 382 F.3d at 1101.[4]

Addressing the remaining private interest factors, it is not evident from the parties' papers what a view of the Resort will do for a jury in evaluating the parties' claims and defenses in the liability phase of the trial. To be precise, at issue with regard to any "viewing" is the state of the walkway at the time of the fall. *See Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 07-61744-CIV, 2008 WL 2844020, at *6 (S.D. Fla. July 23, 2008) (concluding "[b]ecause the accident scene can be adequately described and presented to the jury through photographs in this Court, just as it could be in a Bahamian court, th[e view of premises] factor does not weigh in favor of the Bahamian forum" (alterations added)). This factor does not favor a dismissal to facilitate a Dominican forum.

---

[4] The Court's conclusion on this point impacts three private interest considerations pursuant to *King*: the ease of access to sources of proof; availability of compulsory process to compel witness attendance; and the costs of obtaining the attendance of willing witnesses. *See King*, 562 F.3d at 1381.

Finally, Ortiz states in her affidavit she has limited financial means and would not be able to hire an attorney in the Dominican Republic. (*See* Aff. of Maria Ortiz ¶ 4 [ECF No. 55-2]; Resp. 7–8). While a dismissal may make the case less easy, expeditious, and inexpensive to litigate for Ortiz, the lack of availability of American-style contingency fee arrangements in the Dominican Republic does not merit substantial weight in a *forum non conveniens* analysis. *See Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1378 (S.D. Fla. 2013). In this regard, the case would be costlier to litigate in the Untied States if it required the attendance of multiple foreign witnesses, some of whom lack visas to travel to the United States. Given these competing considerations, this factor neither favors nor disfavors dismissal.

The Court is cognizant a robust presumption favors a U.S. citizen's choice of forum. And admittedly, the availability of viewing the premises does not favor dismissal, and the practical problems making trial easy and inexpensive neither favor nor disfavor dismissal. But the ease of access to sources of proof, availability of compulsory process to compel witness attendance, and the costs of obtaining the attendance of willing witnesses heavily favor Hard Rock's position. Guided by the decisions in *Goldstein I* and *Goldstein II* concerning a remarkably similar situation, the Court concludes the private interest factors here favor dismissal.

### ii. Public Interest Factors

"Even if the private interest factors strongly support dismissal, the court should proceed to analyze the public factors." *Montgomery*, 945 F. Supp. 2d at 1374 (citation omitted); *see also McLane v. Marriott Int'l, Inc.*, 960 F. Supp. 2d 1351, 1360 (S.D. Fla. 2013) (analyzing and weighing public interest factors "for completeness"). The Court therefore turns to the public interest factors.[5]

---

[5] The Court has previously recognized that while this District has one of the busiest dockets in the United States, the court congestion factor is afforded little or no weight in the *forum non conveniens* analysis.

As to the burdens associated with jury duty, the Court should generally avoid imposing jury duty on residents of a jurisdiction having little relationship to the controversy. *See Snee v. Sunrise Props. Ltd.*, No. 06-80614-CIV, 2009 WL 2163179, at *4 (S.D. Fla. July 17, 2009) (citation omitted). The Dominican Republic has a greater local interest in adjudicating the safety of the Resort than does the United States. Indeed, it is hard for the Court to fathom the interest of a Florida jury in a controversy surrounding a New Jersey resident suffering injuries at a Dominican resort after slipping on a walkway, other than the attenuated, detached interest of hearing the tale of a ruined island vacation. Further, if trial in this forum will require the application of foreign law, jurors may be burdened slightly more than if asked to follow U.S. law. *See McLane*, 960 F. Supp. 2d at 1362. While the burden of jury duty is a lesser-weighted factor, *see Matthews v. Whitewater W. Indus., Ltd.*, No. 11-24424-CIV, 2012 WL 1605184, at *12 (S.D. Fla. May 8, 2012), on balance, this factor weighs in favor of dismissal.

With regard to choice of law, under Florida's "significant relationships test," the Court considers the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship, if any, between the parties is centered. *Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115–16 (11th Cir. 1996) (citation omitted). In this diversity action where the injury occurred in the Dominican Republic and the place of the parties' relationship, if any, arose in the Dominican Republic, it appears under the significant relationships test Dominican law will apply. *See McLane*, 960 F. Supp. 2d at 1361–62; *Montgomery*, 945 F. Supp. 2d at 1377 ("Because all of the key events involving the parties here occurred in the Bahamas, the most significant relationship test would likely require

---

*See Morse v. Sun Int'l. Hotels, Ltd.*, No. 98-7451-Civ, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001) (citation omitted).

the application of Bahamian law."). Further, unlike previous decisions denying dismissal in cases involving the Bahamas, *see, e.g., Matthews*, 2012 WL 1605184, at *12, the present controversy involves foreign law that is both in a foreign language (Spanish) and that does not derive from English common law. *See Banco Mercantil, S.A. v. Hernandez Arencibia*, 927 F. Supp. 565, 569 n.7 (D.P.R. 1996) (noting "the Dominican Republic adopted the French Civil Code in 1884" (citations omitted)).

Ortiz contends there is a "'false conflict'" because damages obtainable under Dominican law do not differ from those otherwise obtainable under Florida tort law. (*See* Resp. 14–15). But the very purpose of the *forum non conveniens* procedure is to avoid requiring the Court to "untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp.*, 330 U.S. at 509. Ortiz's request for an "evidentiary hearing" (Resp. 15 n.7), in order to decipher Dominican law, would frustrate this goal and involve the Court in protracted analysis of a foreign nation's civil code in a foreign language. Given these considerations, this public interest factor weighs in favor of dismissal.[6]

There is certainly "a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *SME Racks, Inc.*, 382 F.3d at 1104 (citations and internal quotation marks omitted)). There is an equally countervailing strong interest in having Dominican courts pass on tortious conduct that occurs entirely inside that nation's boundaries. *See Matthews*, 2012 WL 1605184, at *12–13 (citing cases). Certainly this case is distinguishable from *SME Racks, Inc.*, in which the Eleventh Circuit noted in dicta "the United States has a

---

[6] Ortiz also contends Florida law should apply to Hard Rock's decisions concerning the promulgation of standards because those decisions are made in Florida, but she provides no authority for the proposition Florida negligence law would provide the relevant standard of care for a slip and fall that occurred in a foreign nation. (*See* Resp. 15).

strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business that *actively solicited business and caused harm within the home forum*." *SME Racks, Inc.*, 382 F.3d at 1104 (emphasis added). Here, the sovereign interest factor weighs in favor of dismissal.

Again, the Court is guided by the remarkably similar situation facing the court in *Goldstein I*. Despite the very strong interest in recognizing a plaintiff's choice of forum in a dispute with a U.S. corporate defendant, Hard Rock makes a compelling showing the *forum non conveniens* public interest factors favor dismissal and there would be manifest injustice if the case were retained in this District.

### 3. Reinstating the Suit Without Inconvenience

The last consideration in a *forum non conveniens* analysis is whether Ortiz can reinstate her suit in the Dominican Republic without undue inconvenience and prejudice. It appears a suit can be properly brought in the Dominican Republic. (*See* Ubiera Aff. ¶¶ 43–45, 56–57). Ortiz does not dispute this assertion. (*See generally* Resp.). Further, Hard Rock has agreed to submit to the jurisdiction of the proper court in that nation, to accept service of process there, to be bound by any final judgment rendered against it there, and to not plead any statute of limitations defense or raise any jurisdictional bar in the courts of the Dominican Republic. (*See* Mot. 15 (footnote call number omitted)). The *Goldstein I* court found the inclusion of similar conditions appropriate in ordering dismissal. *See Goldstein I* 17.[7] And in another case the Eleventh Circuit noted "the district court wisely attached to the dismissal conditions" similar to those Hard Rock

---

[7] Although the defendants in *Goldstein I* did not appear to stipulate to them, *see Goldstein I* 5, the court required two additional conditions of dismissal: "Defendants shall make witnesses and evidence available to the Plaintiffs in the appropriate court in the Dominican Republic," *id.* 17, and "In the event that the appropriate court or courts of the Dominican Republic fail or refuse to grant access to either the Plaintiffs or the Defendants, the parties may return to this jurisdiction for further proceedings," *id.* 18. The Court adopts these conditions in this Order.

agrees to here. *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996).

Ortiz asserts she "is not financially able to pursue a lawsuit in the Dominican Republic," and notes the Ubiera Affidavit "is silent as to what occurs should [] Ortiz not prevail and whether the money owed by her in the form of costs can be collected by her attorney." (Resp. 7–8 (alteration added; citation omitted)). Ortiz appears to implicitly argue the lack of contingency fee arrangements in the Dominican legal system counsels against dismissing the case. But "if the lack of a contingent fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums." *Magnin*, 91 F.3d at 1430 (alterations and internal quotation marks omitted); *see also Montgomery*, 945 F. Supp. 2d at 1378. This concern is not afforded substantial weight in the analysis, and there is no undue inconvenience and prejudice preventing Ortiz from reinstating her suit in the courts of the Dominican Republic.

### III.  CONCLUSION

Based on the foregoing analysis of the relevant *forum non conveniens* considerations, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 54]** is **GRANTED**. Counts I and II of the Amended Complaint **[ECF No. 45]** are **DISMISSED** pursuant to *forum non conveniens*, subject to the following conditions:

1. Hard Rock shall submit to the jurisdiction of any court of the Dominican Republic having jurisdiction of this case under the laws of the Dominican Republic;

2. Hard Rock shall be bound by any judgment rendered against it when required by the appropriate court in the Dominican Republic;

3. Hard Rock shall accept service of process in the Dominican Republic;

4.  Hard Rock shall make witnesses and evidence available to Ortiz in the appropriate court in the Dominican Republic; and

5.  Hard Rock shall not plead a statute of limitations defense or assert any jurisdictional bar in the courts of the Dominican Republic.

6.  In the event the appropriate court or courts of the Dominican Republic fail or refuse to grant access to either Ortiz or Hard Rock, the parties may return to this jurisdiction for further proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of August, 2014.

*[signature]*
_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record